OPINION OF THE COURT
 

 Levine, J.
 

 Defendant, a dentist, was convicted of sexual abuse in the third degree (Penal Law § 130.55) for fondling a 17-year-old girl during an appointment. The issue in this case is whether the loss on appeal of a trial exhibit — a tape recording of a conversation in which defendant responded to the victim’s allegations of abuse — warranted summary reversal of defendant’s conviction on the ground that the loss deprived the Appellate Term of the ability to conduct any meaningful appellate review.
 

 The complainant testified at a bench trial about the events in question, including that defendant sexually abused her while purportedly treating her teeth. A police investigator also testified that, when this incident was reported to the police several months later, she requested the complainant to call defendant at his office to confront him with the accusations of sexual abuse. A tape recording of that conversation was admitted into evidence. When questioned at trial about the conversation, defendant testified that he was shocked by the allegations and could not freely discuss them at the time of the phone call because of the presence of his dental assistant and a patient. However, he conceded his failure to deny the allegations of physical contact, testifying instead that he had told the complainant that “there is a misunderstanding; there is a mistake. * * * I am sorry for the way you feel, okay” and that “it was not my intent.”
 

 The court found defendant guilty and sentenced him to one year probation. At the sentencing hearing, the court noted that defendant’s statement on the tape recording “was revealing” and it characterized the recording as “the icing on the cake in this case.” Nonetheless, the court emphasized that “there is no doubt in my mind when evaluating the complainant’s credibility and the defendant’s this was not an even mix by any standard. The complainant impressed me as immeasurably more truthful and sincere than the defendant.”
 

 
 *59
 
 Defendant appealed, primarily arguing that the trial court erred in denying his request to admit certain expert opinion testimony pertaining to a polygraph exam. Defendant also contended that the evidence was legally insufficient because “the only direct evidence that the crime occurred consisted of the complainant’s inconsistent and unreliable testimony.” He did not assert, however, that the taped telephone conversation was exculpatory, inaccurate or otherwise crucial to guilt or innocence or to any of the other issues he raised on appeal.
 

 The Appellate Term reversed, but not on any of the grounds urged by defendant. Rather, noting that the tape recording of the conversation between defendant and the victim had been lost, the court sua sponte determined that proper appellate review was impossible. In reaching this conclusion, the court characterized the tape as “critical” to the trial court’s finding of guilt. Because defendant had already served his sentence of probation on this class B misdemeanor, the court dismissed the accusatory instrument, citing
 
 People v Flynn
 
 (79 NY2d 879 [1992]) and
 
 People v West
 
 (56 NY2d 637 [1982]). A Judge of this Court granted the People leave to appeal and we now reverse.
 

 We begin with the basic proposition that a defendant has a fundamental right to appellate review of a criminal conviction
 
 (see People v Harrison,
 
 85 NY2d 794, 796 [1995];
 
 People v Montgomery,
 
 24 NY2d 130, 132 [1969];
 
 see also
 
 CPL 450.10). The loss of a trial exhibit, however, does not necessarily deprive a defendant of effective appellate review
 
 (see People v Glass,
 
 43 NY2d 283 [1977];
 
 People v Strollo,
 
 191 NY 42 [1908]). To determine whether the loss of a trial exhibit necessitates the reversal of a conviction or requires some other corrective action, an appellate court must engage in the analysis established in
 
 Strollo
 
 and its progeny.
 

 In
 
 Strollo,
 
 this Court held that the loss of original handwritten exhibits on appeal did not require a reversal and new trial. The exhibits — letters written in a foreign language — had been translated into English. Because these translations were in the record, their accuracy was not seriously disputed and the evidence was legally sufficient without them, the Court held that reversal was not required. In reaching this conclusion, the Court recognized that a reversal may have been appropriate if the case was “so wholly or largely dependent upon documentary evidence that there would be no proof and could be no judgment without the documents” (191 NY at 66). The Court also noted that the loss of documents would
 
 not
 
 necessitate a
 
 *60
 
 reversal in those cases where the documents have “no substantial importance” to the issues raised on appeal or where there are copies of the documents “and the correctness of the copies is unquestioned or unquestionable”
 
 (id.).
 

 Moreover, as articulated in our later precedents, there “is a presumption of regularity which attaches to a judicial proceeding * * * and the unavailability of [an exhibit], either because it has been lost or inadvertently destroyed, standing by itself, will not rebut that presumption”
 
 (Harrison,
 
 85 NY2d at 796). Indeed, to rebut the presumption, the defendant has the burden to make an “appropriate showing” that “alternative methods to provide an adequate record are not available”
 
 (Glass,
 
 43 NY2d at 286 [1977]). Therefore, a reversal is appropriate only “when a record cannot be reconstructed because of the lapse of time, the unavailability of the participants in the proceeding or some similar circumstance”
 
 (Harrison,
 
 85 NY2d at 796).
 

 Glass
 
 is particularly instructive. In that case, the defendant, who was convicted after a jury trial, argued that he was deprived of effective appellate review because the court reporter could not find the untranscribed stenographic notes covering the summations and jury charge. We held that the defendant did not overcome the presumption of regularity that attached to his trial because he failed to establish that those portions of the record could not be reconstructed. Specifically, the defendant did not establish “that he, his trial counsel, the prosecutor, court personnel, others present during trial, or, for that matter, the Trial Judge were not willing and capable of aiding in the reconstruction of a substitute record” (43 NY2d at 286).
 

 Strollo
 
 and its progeny thus provide a sound analytic framework for determining whether the loss of a trial exhibit precludes meaningful appellate review. An appellate court must first determine whether the exhibit has “substantial importance” to the issues in the case or is essentially collateral. If the information contained within the exhibit is needed to resolve the issues raised on appeal, the appellate court must then determine whether the record otherwise reflects that information. If the information in the missing exhibit can be gleaned from the record and there is no dispute as to its accuracy, the loss of the exhibit itself would not prevent proper appellate review. On the other hand, if the information in the exhibit is important, but otherwise not contained in the record, the appellate court should order a reconstruction hearing unless the defendant establishes that such a hearing would be futile.
 

 
 *61
 
 In this case, we cannot conclude as a matter of law that the actual tape recording was necessary for effective appellate review of the legal sufficiency of the evidence supporting the conviction — the only issue defendant raised on appeal that may have required review of the lost recording. Initially, it is far from clear that the legal sufficiency issue could not be resolved purely on the victim’s testimony. Indeed, the trial court apparently viewed the victim’s testimony as providing legally sufficient evidence, characterizing the tape recording only as the “icing on the cake,” rather than as necessary to establish some element of the crime. Nor does the record otherwise support the Appellate Term’s determination that the tape was “critical” to the trial court’s finding of guilt. After all, putting the tape aside, the trial court stressed that the complainant was “immeasurably” more credible than defendant. In any event, defendant did not argue at the Appellate Term that the tape was needed to establish a prima facie case against him or that it was exculpatory.
 

 Moreover, the tape recording would be material only insofar as it revealed defendant’s actual response to being confronted with the victim’s accusations. But defendant himself testified that he responded “there is a misunderstanding; there is a mistake. * * * I am sorry for the way you feel, okay” and “it was not my intent.” Thus, the record itself does not definitively reflect the existence of a conflict over the contents of the exhibit. Even assuming that effective appellate review required the contents of the tape to be further developed, the Appellate Term failed to conduct any inquiry as to whether the contents could have been reconstructed at a hearing. In addition, the Appellate Term decision does not reflect consideration of any of the pertinent factors in determining whether the tape was needed for its weight of the evidence review.
 

 The Appellate Term’s order therefore must be reversed and the case remitted to that court to allow the parties the opportunity to both brief and argue the need for the tape recording in order to accomplish effective appellate review, based upon the criteria set forth in
 
 Strollo
 
 and its progeny. If the court concludes that the tape is not needed, it should consider all issues raised but not decided by that court on the initial appeal. If it determines that the tape is needed for appropriate appellate review, the court should determine whether defendant has met his burden to establish that a reconstruction hearing would be futile. If defendant has not done so, the court should hold the appeal in abeyance and remit the matter to
 
 *62
 
 Criminal Court for such a hearing. If reconstruction of the tape is accomplished, the court should then address all issues raised but not decided in the initial appeal. If reconstruction of the tape was deemed necessary but was not accomplished, the court should reverse the judgment of conviction and sentence and dismiss the accusatory instrument.
 

 Accordingly, the order of the Appellate Term should be reversed and the case remitted to that court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed and case remitted to the Appellate Term for the Second and Eleventh Judicial Districts for further proceedings in accordance with the opinion herein.